IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHRISTIAN SCHAFFELD,<br><br>                    Plaintiff,<br><br>vs.<br><br>SCIOS, INC., a Delaware Corporation, and JOHNSON & JOHNSON FAMILY OF COMPANIES, an undefined business entity, and DOES A through D, fictitiously named,<br><br>                    Defendants. | Case No.  CV 07-0121-S-EJL-LMB<br><br>**ORDER** |

Currently pending before the Court is Plaintiff's Motion to Compel Written Discovery (Docket No. 22).  Having Carefully reviewed the record and in the interest of avoiding further delay, the Court enters the following Order.

**I.**

**BACKGROUND AND PROCEDURAL HISTORY**

This case generally arises from Plaintiff Christian Schaffeld's ("Schaffeld") termination from employment with Defendant, Scios, Inc. ("Scios"), a wholly-owned subsidiary of Defendant Johnson & Johnson Family of Companies ("Johnson & Johnson").  Scios is the manufacturer, marketer, distributor and seller of a drug, nesiritide, designed for the treatment of patients with acute heart failure.  *Complaint*, ¶ 12 (Docket No. 1); *Answer,* ¶ 12 (Docket No. 12).  Nesiritide is marketed and sold under the registered trademark name of Natrecor.  *Id.*

On April 1, 2002, Plaintiff was hired by Scios as a Cardiovascular Specialist with responsibility for selling Natrecor to various providers.  *Complaint*, ¶ 17 (Docket No. 1);

*Answer*, ¶ 17 (Docket No. 12).  At the time he was hired, Plaintiff was assigned a sales territory including the states of Washington, Oregon, and Idaho.  *Complaint*, ¶ 18 (Docket No. 1); *Answer*, ¶ 18 (Docket No. 12).  Included in Plaintiff's compensation was participation in a stock option benefit plan and bonus compensation based on performance.  *Complaint*, ¶¶ 20, 22 (Docket No. 1).

Plaintiff claims that, while he was employed by Scios, he was provided with training, support and assistance in the promotion, marketing and sale of Natrecor without meaningful guidance regarding the legality of promoting Natrecor for off-label[1] uses.  *Id.* at ¶ 23.  Plaintiff alleges that throughout his employment with Scios, Scios and its managers were engaged in knowingly and aggressively promoting and supporting off-label use of Natrecor.  *Id.* at ¶¶ 24, 28.  Plaintiff describes the following activities that Scios allegedly undertook in knowing violation of Food Drug and Cosmetic Act of 1938 and/or the Food and Drug Administration Modernization Act of 1997:

(a) publishing, financing and/or distributing, through its drug representatives, brochures, infusion protocols and various other pieces of literature designed to advise and instruct physicians and clinics on how to establish outpatient programs to provide regular off-label Natrecor treatment to patients;

(b) sponsoring and promoting, through its drug representatives, tutorial/preceptorship programs for physicians and their professional staffs on how to implement financially successful outpatient infusion programs administering Natrecor in off-label uses;

(c) distributing, through its drug representatives, various articles authored by physicians addressing and supportive of off-label uses of Natrecor, which articles, in many instances, relied upon data Scios paid the authors and others to collect and maintain;

(d) financing and/or sponsoring meetings, peer-consultations, seminars and various continuing medical education (CME) programs devoted to congestive heart

---

[1] "Off-label" refers to the use of a drug to treat a condition for which it has not been approved by the Federal Drug Administration ("FDA").

>    failure, and recruiting physicians supportive of the off-label, outpatient infusion use of Natrecor to deliver presentations at these programs;
>
> (e) paying honoraria to selected physicians or members of their professional staffs to attend such programs, and authorizing its drug representatives to recruit and invite attendees, often paying for their travel and lodging expenses;
>
> (f) providing educational grants to physicians supportive of and experienced in administering Natrecor through outpatient infusions and during open heart surgery to attend CME programs to explain, encourage, and promote such off-label use; and
>
> (g) training Scios drug representatives, in turn, to demonstrate and explain to physicians, clinics, and hospitals the enhanced income advantages to them from the off-label uses of Natrecor, and providing supportive literature, Medicare billing code information and toll-free telephone advice on how to help physicians maximize billings and reimbursements for off-label out-patient uses of Natrecor.

*Id.* at ¶ 29.

Further, Plaintiff alleges that he received positive performance reviews until his sales territory was changed after Scios was acquired by Johnson & Johnson in 2004. *Id*. at ¶¶ 32-35. Plaintiff alleges that in April 2004 he attended a National Sales Conference sponsored by Scios and Johnon & Johnson and learned for the first time that the off-label promotion of Natrecor was potentially illegal and prohibited. *Id.* at ¶ 36.

Despite the prohibition, Plaintiff claims that his District Manager, Bill Hickman, continued to direct and encourage the promotion of off-label use of Natrecor by Defendants' drug representatives, including Plaintiff. *Id.* at ¶ 37. On January 5, 2005, Plaintiff received a poor performance review allegedly based on Plaintiff's reluctance and resistance to marketing activities that promoted the off-label use of Natrecor. *Id.* at ¶ 40. Plaintiff reported his concerns regarding off-label promotion to Hickman and Human Resources personnel. *Id.* at ¶¶ 44-45.

On March 11, 2005, Plaintiff was removed from his responsibilities in his assigned sales territory and eventually discharged from employment with Scios. *Id.* at ¶ 46. Plaintiff alleges

that he was fired in retaliation for his opposition to Defendants' off-label promotion of Natrecor. *Memorandum in Support of Plaintiff's Motion to Compel*, p. 1 (Docket No. 22-2).

Plaintiff alleges that in 2005, a number of studies were conducted raising questions regarding the risks associated with off-label use of Natrecor. *Complaint*, ¶¶ 49-53 (Docket No. 1). In July 2005, Scios issued and distributed a safety alert to healthcare providers informing them that Natrecor is not approved or recommended for intermittent or scheduled infusions to treat congestive heart failure patients in an out-patient setting, and the U.S. Attorney in Massachusetts also began investigating Defendants' promotion of off-label use of Natrecor. *Id.* at ¶¶ 53-54.

On March 9, 2007, Plaintiff filed the instant action asserting claims of discharge in breach of public policy and breach of contract and/or violation of ERISA.[2] *Complaint*, pp. 13-17 (Docket No. 1). Plaintiff also suggests that he will file a motion seeking to add a claim for punitive damages. *Complaint*, ¶¶ 91-92 (Docket No. 1). Defendants answered the Complaint and raised eleven affirmative defenses. *Answer* (Docket No. 12).

## II.

## DISCUSSION

**A.    Legal Standard**

The Federal Rules of Civil Procedure provide a liberal framework for obtaining discovery. *See Hickman v. Taylor*, 329 U.S. 495, 505 (1947). Federal Rule of Civil Procedure 26 provides that, in general:

---

[2] The breach of contract and ERISA claims are related to Defendants' alleged withholding of certain stock options Plaintiff values in excess of $100,000. *Memorandum in Support of Plaintiff's Motion to Compel*, p. 2 (Docket No. 22-2).

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party .... For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears <u>reasonably calculated to lead to the discovery of admissible evidence.</u>

FED. R. CIV. P. 26(b)(1) (emphasis added). This definition of relevancy, for the purposes of discovery, "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Consistent with the liberal, notice pleading standards, "discovery is not limited to issues raised in the pleadings, for discovery itself is designed to help define and clarify the issues." *Id*.

At the same time, there are limits to what a party may properly seek via discovery. "District courts need not condone the use of discovery to engage in 'fishing expeditions[s]." *Rivera v. NIBCO*, 364 F.3d 1057, 1072 (9th Cir. 2004)(citing *Exxon Corp. v. Crosby-Mississippi Res., Ltd.*, 40 F.3d 1474, 1487 (5th Cir. 1995)). Thus the courts will not compel discovery that is wholly speculative.

**B.    General Objections**

Defendants oppose Plaintiff's motion to compel and have raised a number of general objections to Plaintiff's discovery requests. First, Defendants object to a number of discovery requests as they apply to time periods beyond Plaintiff's termination from employment. *Memorandum in Opposition to Motion to Compel*, p. 7 (Docket No. 27-2). However, a blanket date limitation will not be imposed, as there are discovery requests applicable to time periods following Plaintiff's termination from employment that appear reasonably calculated to lead to the discovery of admissible evidence. For example, an investigation into off-label promotion that was initiated after May 2005 may cover or apply to activity that occurred before May 2005.

Second, Defendants object to certain discovery requests on the basis that off-label marketing is not an element of plaintiff's claim and, therefore, is not relevant to the issues set forth in the Complaint. *Id.* at 8-9 (Docket No. 27-2). To the contrary, Plaintiff has alleged in his Complaint that he was discharged in retaliation for his opposition to Defendants' off-label promotion of Natrecor. *Memorandum in Support of Plaintiff's Motion to Compel*, p. 1 (Docket No. 22-2). Accordingly, the promotion of Natrecor for off-label issues is relevant to the allegations in the Complaint for the purposes of discovery.

Third, Defendants object to certain interrogatories, because they are not limited in geographic scope and seek company-wide information regarding similarly-situated employees. *Memorandum in Opposition to Plaintiff's Motion to Compel*, pp. 11-15 (Docket No. 27-2) (citing *Purkey v. Rubino*, 2006 WL 3497267 (D. Idaho)). These requests are best understood in specific context; however, as a general rule such discovery will be permitted as the Plaintiff in this case, in contrast to the Plaintiff in *Rubino*, alleges that he was wrongfully discharged for refusing to engage in company-wide policies and practices that he believed were wrongful. In addition, the requests are calculated to disclose a pattern or practice of similar activity company-wide. *Memorandum in Support of Plaintiff's Motion to Compel*, p. 6 (Docket No. 22-2). In light of these allegations, the discovery requests will not be limited in geographic scope.

Fourth, Defendants argue that a number of the discovery requests are overly burdensome. *Memorandum in Opposition to Plaintiff's Motion to Compel*, p. 9 (Docket No. 27-2). After a careful review of the record, it does not appear to the Court that the requested discovery is overly-burdensome as contemplated by the rules of discovery.

C.    **Specific Objections**

Despite the parties' on-going efforts to resolve their differences, ten Interrogatories and 12 Requests for Production remain in dispute. *Reply Memorandum in Support of Plaintiff's Motion to Compel Written Discovery*, p. 2 (Docket No. 33). The discovery sought is provided below with the judicial resolution of the dispute immediately following.

**Interrogatory No. 9**: Please identify each and every person now and/or previously employed by either of the Defendants who participated in, or was consulted in any way about, the decision to terminate Plaintiff's employment. Ex. I, *Affidavit of William L. Mauk* (Docket No. 22-6).

The discovery sought is permissible, as it appears reasonably calculated to lead to the discovery of admissible evidence. At the same time, Defendants represent that they have provided all documents responsive to this request. *Memorandum in Opposition to Plaintiff's Motion to Compel*, p. 11 (Docket No. 27-2). Therefore, Plaintiff's motion is denied without prejudice in this regard. However, Defendants are subject to a duty to supplement should further information become known.

**Interrogatory No. 10**: Please identify the person or persons between 2001 and 2005 who is most familiar with the kinds of data collected, used and maintained about the sales of Natrecor, how such information was maintained and what kinds of information or reports could be produced regarding such sales from Defendants' records or electronically stored data and, if the person or persons most familiar with such data and information today is different, please identify such person or persons separately, as well. Ex. I, *Affidavit of William L. Mauk* (Docket No. 22-6).

The discovery sought is permissible, as it appears reasonably calculated to lead to the discovery of admissible evidence. Further, the request is not so vague as to preclude an answer and need not be limited in geographic scope. Therefore, to the extent Defendants' Answer to Interrogatory No. 10 is incomplete, it must be supplemented.

**Interrogatory No. 11:** Please <u>identify</u> every person who has ever asserted a claim against Scios, Inc., regardless of whether it resulted in a lawsuit, alleging in any fashion that any form of adverse action was taken against him or her by Scios in response to a complaint, concern, opposition, refusal or reluctance involving the promotion, marketing or sale of Natrecor for any use regarded as off-label, unauthorized, unapproved or unsafe, and where a lawsuit resulted, please name the parties, court, case number and date of filing. Ex. A, *Affidavit of William L. Mauk* (Docket No. 22-4).

The discovery sought is permissible, as it appears reasonably calculated to lead to the discovery of admissible evidence. Further, the request is not so vague as to preclude an answer. Therefore, to the extent Defendants' Answer to Interrogatory No. 11 is incomplete, it must be supplemented.

**Interrogatory No. 12**: Please <u>identify</u> every person who has ever asserted a claim against Scios and/or Johnson & Johnson, regardless of whether it resulted in a lawsuit, alleging in any fashion and for any reason that he/she was wrongfully denied vesting and or exercise of stock options following the acquisition of Scios by Johnson & Johnson, and where a lawsuit resulted, please name the parties, court, case number, attorneys, and date of filing. Ex. A, *Affidavit of William L. Mauk* (Docket No. 22-4).

The discovery sought is permissible, as it appears reasonably calculated to lead to the discovery of admissible evidence. At the same time, Defendants represent that they have provided all documents responsive to this request. *Memorandum in Opposition to Plaintiff's Motion to Compel*, p. 14 (Docket No. 27-2). Therefore, Plaintiff's motion is denied without prejudice in this regard. However, Defendants are subject to a duty to supplement should further information become known.

**Interrogatory No. 13:** Please <u>identify</u> the person or persons between 2001 and 2005 who is most familiar with the kinds of data collected, used and maintained about grants, speaker fees, honorarium, travel and expense reimbursements and like payments made by either Defendant or its agents to physicians, nurses, nurse practitioners, clinics, hospitals, medical schools, consultants and other health care entities or providers outside Scios for services in connection with or attendance at any seminar, symposium, lecture, medical education program, consultant meeting, training program, preceptorship program, roundtable discussions or similar meetings. Ex. A, *Affidavit of William L. Mauk* (Docket No. 22-4).

The discovery sought is permissible, as it appears reasonably calculated to lead to the discovery of admissible evidence. Further, the request is not so vague as to preclude an answer. Therefore, to the extent Defendants' Answer to Interrogatory No. 13 is incomplete, it must be supplemented.

**Interrogatory No. 14:** Please <u>identify</u> every past officer, director, manager, or employee of Scios, Inc., past or present, who has been named as a party or subpoenaed, called, or identified as a witness for deposition, discovery or trial purposes in any civil or criminal investigation or litigation related to Genentech, Inc. and its sales, marketing or promotion of pharmaceutical products or devices for allegedly off-label, FDA unapproved, fraudulent or illegal uses or activities. Ex. A, *Affidavit of William L. Mauk* (Docket No. 22-4).

The discovery sought is permissible, as it appears reasonably calculated to lead to the discovery of admissible evidence. Further, the request is not so vague as to preclude an answer. Therefore, Defendants must answer Interrogatory No. 14.

**Interrogatory No. 15:** Please <u>identify</u> every employee of the Defendants between 2002 and the present (including the Plaintiff) who worked under the supervision of Laura McDermott, Bill Hickman or their successors, and with respect to each employee please state:

   a) the inclusive dates of employment;
   b) the employee's bonuses and other incentive compensation paid, by year, based upon sales of vials of Natrecor or other performance criteria; and
   c) the number of vials of Natrecor sold each year to physicians, clinics, hospitals or other health care providers, identified by name of provider, that were credited to the employee for bonus, incentive compensation or any other purposes.

Ex. A, *Affidavit of William L. Mauk* (Docket No. 22-4).

The discovery sought is permissible, as it appears reasonably calculated to lead to the discovery of admissible evidence. Further, the request is not so vague as to preclude an answer. Therefore, to the extent Defendants' Answer to Interrogatory No. 15 is incomplete, it must be supplemented.

**Interrogatory No. 16:** Please <u>identify</u> every employee of Scios who was a participant in Scios, Inc. Non-Statutory Stock Option Plan on the date Scios was acquired by Johnson & Johnson and who, between 2003 and 2005 forfeited, or was otherwise not allowed to fully exercise all remaining stock options without vesting limitations at the termination of his or her

employment, and for each the reason or reasons for the forfeiture/ non-exercise of his or her stock options.  Ex. A, *Affidavit of William L. Mauk* (Docket No. 22-4).

The discovery sought is permissible, as it appears reasonably calculated to lead to the discovery of admissible evidence.  Further, the request is not so vague as to preclude an answer.  Therefore, Defendants must answer Interrogatory No. 16.

**Interrogatory No. 20:**  For each person named in Exhibit A attached hereto, please identify those who are presently employed by Scios, Inc., Johnson & Johnson or any subsidiary, the position held and the location of such employment and telephone number, and for all other persons who were previously employed, please provide the present or last known residence and business addresses and telephone numbers.  Ex. B, *Affidavit of William L. Mauk* (Docket No. 22-5).

The discovery sought is permissible, as it appears reasonably calculated to lead to the discovery of admissible evidence.  However, the parties dispute is focused upon the manner in which these individuals are contacted.  Defendants provided Plaintiff's counsel with home addresses and telephone numbers for current and former non-managerial Scios employees and former Scios managers.  Ex. E, *Affidavit of William L. Mauk* (Docket No. 22-6).  Defendants request that current employees only be contacted through Defendants' counsel and previous managers and/or directors be contacted only after obtaining court permission.  *Id*.; *Memorandum in Opposition to Plaintiff's Motion to Compel*, p. 15 (Docket No. 27-2).  That request is more than reasonable.

Defendants are the only named parties to the lawsuit and Defendants' counsel represents Defendants' employees.  Therefore, to the extent Plaintiff's counsel wishes to communicate with Defendants' current employees, such communication must be directed through counsel.  Furthermore, while Defendants' efforts to protect its former employees, managers and directors is understandable, unless such individuals are represented by counsel, Plaintiff may contact them directly.

ORDER - 10

**Interrogatory No. 21:** Please describe all facts that you rely upon in support of each of your eleven (11) Affirmative Defenses and <u>identify</u> each person who has knowledge of such facts and all documents that support each defense. Ex. B, *Affidavit of William L. Mauk* (Docket No. 22-5).

The discovery sought is permissible, as it appears reasonably calculated to lead to the discovery of admissible evidence. Further, the request is not so vague as to preclude an answer. Therefore, to the extent Defendants' Answer to Interrogatory No. 21 is incomplete, it must be supplemented.

**Request for Production No. 8:** Produce copies of the calendars, diaries and/or logs of Bill Hickman and Rise Ciufia, including any electronic versions thereof, for calendar years 2003 through 2005. Ex. A, *Affidavit of William L. Mauk* (Docket No. 22-4).

The discovery sought is permissible, as it appears reasonably calculated to lead to the discovery of admissible evidence. Further, the request is not so vague as to preclude an answer or response. Therefore, to the extent Defendants have not produced documents responsive to Request for Production 8, they must do so.

**Request for Production No. 9:** Produce copies of all entries in any diary, journal, day timer, day planner, or calendars, including electronic versions thereof, regarding the allegations described in your complaint, your denials of such allegations and your defenses to the allegations and Plaintiff's claims in this action. Ex. A, *Affidavit of William L. Mauk* (Docket No. 22-4).

The discovery sought relevant to Defendants' denials and defenses is permissible, as it appears reasonably calculated to lead to the discovery of admissible evidence. Further, the request is not so vague as to preclude production, an answer, or response. However, the request is limited in scope to all such documents created on or before December 31, 2005.

**Request for Production No.13**: Please produce true and complete copies of all documents produced by either Defendant relating to Natrecor in response to any subpoena issued since 2003 by any Office of a U.S. Attorney, any other office or agency of the U.S. Department of Justice and/or any office or agency of the U.S. Food & Drug Administration. Ex. A, *Affidavit of William L. Mauk* (Docket No. 22-4).

The discovery sought is permissible, as it appears reasonably calculated to lead to the discovery of admissible evidence. Further, the request is not so vague as to preclude production, an answer, or response. However, the request is limited to documents produced in response to subpoenas issued between January 1, 2003 and December 31, 2005.

**Request for Production No. 14:** Please produce a true copy of all portions of the Scios application to the FDA relating to Natrecor (Application No. 20-920) describing the scope of intended use for which approval was sought and documents showing the scope of intended use approved by the FDA. Ex. A, *Affidavit of William L. Mauk* (Docket No. 22-4).

The discovery sought is permissible, as it appears reasonably calculated to lead to the discovery of admissible evidence. Further, the request is not so vague as to preclude production, an answer, or response. Therefore, to the extent Defendants have not produced documents responsive to Request for Production 14, they must do so.

**Request for Production No.17:** Please produce true and complete copies of all training and promotional materials Scios has distributed since August 22, 2005 intended to:
- a) train its sales force and/or promotional speakers regarding the recommended use of Natrecor;
- b) provide new promotional materials regarding Natrecor for use by its sales force with hospitals, clinics, physicians and other health care providers; and
- c) provide recommended language in promotional speaker programs regarding Natrecor.

Ex. A, *Affidavit of William L. Mauk* (Docket No. 22-4).

The discovery sought is permissible, as it appears reasonably calculated to lead to the discovery of admissible evidence. Further, the request is not so vague as to preclude production, an answer, or response. Therefore, to the extent Defendants have not produced documents responsive to Request for Production 17, they must do so.

**Request for Production No.18:** Please produce a true and complete copy of every application and submission to the FDA between 2001 and 2005 seeking supplemental approval of Natrecor for the following uses and all documents showing the date of submission:

- a) any use beyond, greater or in addition to the intended use initially approved by the FDA in 2001;

ORDER - 12

      b)       intermittent infusions in an outpatient setting;
      c)       scheduled or serial infusions in an outpatient setting;
      d)       to improve kidney function;
      e)       to replace diuretics; and
      f)       to enhance the secretion or production of urine (diuresis).

Ex. A, *Affidavit of William L. Mauk* (Docket No. 22-4).

The discovery sought is not allowed, as it does not appear reasonably calculated to lead to the discovery of admissible evidence and Plaintiff's motion is denied as to Request for Production 18.

**Request for Production No.23:** With reference to the 2004 Performance Evaluation produced as part of your Initial disclosures, particularly the pages identified as Document Nos. 000158 and 159, please produce the comparative source data, records, and documents supporting the following statements:

      a)       "His development of OP infusion services has been well below the team average,"
      b)       "He has two OP clinics vs. 33+ for the Seattle team,"
      c)       "He has had 19 issues with expense reports or honorariums that he has had to correct," and
      d)       "Christian composite ranking is 216 of 220-vial vol. Rank is 210, growth rank is 212, and goal rank is 212. Weekly vial trends, A&C acct. 8 to 29 and total acct. 12 ro 39. Penetration began at 2.0%, stands at 2.3% vs. div. At 6.7, 28 accounts purchase Natrecor, 4<100 vials, 24 < 60 vials YTD. Goal attainment: 1st qtr. 43%, 2nd qtr. 64%, 3rd qtr. 62% and thru 12-10-04 62%."

Ex. A, *Affidavit of William L. Mauk* (Docket No. 22-4).

The discovery sought is permissible, as it appears reasonably calculated to lead to the discovery of admissible evidence. Further, the request is not so vague as to preclude prodcution, an answer, or response. Therefore, to the extent Defendants have not produced documents responsive to Request for Production 23, they must do.

**Request for Production No.26:** Please produce true and complete copies of the source data, records and documents supporting the following statements in Document Nos. CL000169 and 170:

      a)       "Christian achieved 173% of goal and 133% of his stretch target in 2003," including documents which show the goals and targets as originally established;

ORDER - 13

      b)    "He led the team in total Natrecor vials sold with 4424," including the comparative sakes figures for all other members of the "team,"

      c)    "He ranked 22nd in the nations in grow vials," including documents which <u>identify</u> and rank of all others in this comparison nation-wide;

      d)    "He grew his business 221% compared to the division growth of 130%;"

      e)    "He had 40 accounts purchasing compared to 28 in 2002;'

      f)    "He had 3 customers with Natrecor vial sales of > 100 in 2002 and 10 accounts that bought over 100 vials in 2003," including records that identify these accounts by name;

      g)    "Christian developed and implemented effective territory plans. These plans contained graphs that compared his account growth to the region and the division," including copies of the "graphs," and

      h)    "He coordinated the development of 4 OP clinics with Tacoma General and Auburn generating a total of 1420 vials in 2003."

Ex. A, *Affidavit of William L. Mauk* (Docket No. 22-4).

The discovery sought is permissible, as it appears reasonably calculated to lead to the discovery of admissible evidence. Further, the request is not so vague as to preclude production, an answer, or response. Therefore, to the extent Defendants have not produced documents responsive to Request for Production 26, they must do so.

**Request for Production No.34:** Please produce a true and complete copy of every subpoena served upon either Defendant or its agents during 2005, 2006 and 2007 from any office, department division or agency of the U.S. Department of Justice, including the offices of any U.S. Attorney, or the food & Drug Administration, seeking documents or information related to Natrecor. Ex. A, *Affidavit of William L. Mauk* (Docket No. 22-4).

The discovery sought is permissible, as it appears reasonably calculated to lead to the discovery of admissible evidence. Further, the request is not so vague as to preclude production, an answer, or response. Therefore, to the extent Defendants have not produced documents responsive to Request for Production 34, they must do so.

**Request for Production No.35:** Please produce every complete (or, if not available, incomplete) record or document showing employees of Defendants who attended or participated in the National Sales conference in New Orleans in 2004. Ex. A, *Affidavit of William L. Mauk* (Docket No. 22-4).

The discovery sought is permissible, as it appears reasonably calculated to lead to the discovery of admissible evidence.  Further, the request is not so vague as to preclude production, an answer, or response.  Therefore, to the extent Defendants have not produced documents responsive to Request for Production 35, they must do so.

**Request for Production No. 40:**  Please produce records, accounts, ledgers or other relevant documents showing by date, amount and purpose any and all grants, fees, honorarium, expense reimbursement and other payments of any kind made by Scios during 2003, 2004, and 2005 to the following:

    a.)    Dr. John Kimball, Tony Stanley and/or Porter Adventist Hospital, Denver, Colorado;
    b)     The Chest Pain Center (associated with Dr. Kimball and/or Porter Adventist Hospital);
    c)     Dr. Orin Burton and/or Cascade Cardiology, LLC, Salem, Oregon; and
    d)     Dr. John Luber and/or Tacoma General Hospital, Tacoma, Washington.

Ex. I, *Affidavit of William L. Mauk* (Docket No. 22-6).

The discovery sought is permissible, as it appears reasonably calculated to lead to the discovery of admissible evidence.  Further, the request is not so vague as to preclude production, an answer, or response.  Therefore, to the extent Defendants have not produced documents responsive to Request for Production 40, they must do so.

**Request for Production No.42:**  Please produce every document you are aware of or relied upon in 2003 supporting the following positions or statements:

    a)     Natrecor was approved as safe and effective for intermittent outpatient infusions for congestive heart failure patients at high risk for decompensation;
    b)     Prescribing Natrecor for a congestive heart failure patient at high risk for decompensation is not an "off label" use;
    c)     Natrecor was approved as safe and effective for intermittent outpatient infusions for congestive heart failure patients with a systolic blood pressure of >90 mmHg; and
    d)     Prescribing Natrecor for a congestive heart failure patient with a systolic blood pressure of > 90 mmHg is not an "off label" use.

Ex. B, *Affidavit of William L. Mauk* (Docket No. 22-5)

The discovery sought is permissible, as it appears reasonably calculated to lead to the discovery of admissible evidence. Further, the request is not so vague as to preclude production, an answer, or response. Therefore, to the extent Defendants have not produced documents responsive to Request for Production 14, they must do so.

## IV.

## CONCLUSION

While Plaintiff has been awarded the majority of relief sought by this Motion to Compel (Docket No. 26), there will be no attorneys fees awarded at this time. Defendants are directed to respond to the discovery requests as outlined above on or before Monday, May 12, 2008.

## V.

## ORDER

THEREFORE IT IS HEREBY ORDERED that Plaintiff's Motion to Compel (Docket No. 22) is GRANTED in part and DENIED in part as outlined in greater detail in the body of this Memorandum Decision. Defendants are directed to comply with the discovery requests fully on or before May 12, 2008.

DATED: **April 10, 2008**.

*/s/ Larry M. Boyle*

Honorable Larry M. Boyle
Chief U. S. Magistrate Judge